1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON

7
   WANDA NESMITH, o/b/o A.S., a      )
8  minor child,                      )  No. CV-07-217-CI
                                     )
9           Plaintiff,               )  ORDER GRANTING PLAINTIFF'S
                                     )  MOTION FOR SUMMARY JUDGMENT
10 v.                                )  AND REMANDING FOR FURTHER
                                     )  PROCEEDINGS
11 MICHAEL J. ASTRUE,                )
   Commissioner of Social           )
12 Security,                         )
                                     )
13          Defendant.               )
                                     )
14 ‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

15      BEFORE THE COURT are cross-Motions for Summary Judgment, noted

16 for hearing without oral argument on January 14, 2008. (Ct. Rec. 13,

17 15.)  Plaintiff filed a reply brief on January 14, 2008.  (Ct. Rec.

18 17.)   Attorney Maureen J. Rosette represents Plaintiff; Special

19 Assistant United States Attorney Leisa A. Wolf represents the

20 Commissioner of Social Security ("Commissioner").   The parties have

21 consented to proceed before a magistrate judge.   (Ct. Rec. 7.)

22 After reviewing the administrative record and the briefs filed by

23 the parties, the court **GRANTS** Plaintiff's Motion for Summary

24 Judgment (Ct. Rec. 13) and remands the matter to the Commissioner

25 for additional proceedings.  Defendant's Motion for Summary Judgment

26 (Ct. Rec. 15) is **DENIED**.

27                              **JURISDICTION**

28      The current application for Social Security Income ("SSI")

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 1

benefits on behalf of a minor child ("Plaintiff'), was protectively filed on January 24, 2003, alleging disability since November 17, 1992, due to cerebral palsy with static encephalopathy and memory deficits.  (Tr. 364-367.)  The application was denied initially and on reconsideration.  (Tr. 343-347, 350-352.)  On April 25, 2005, an administrative hearing was held before Administrative Law Judge ("ALJ") John R. Crickman, at which time testimony was taken from Plaintiff, represented by counsel, her mother, Wanda Nesmith, and medical expert Jay Toews, Ed.D.  (Tr. 482-523.)  On July 28, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 19-27.)  The Appeals Council denied a request for review on June 22, 2007.  (Tr. 8-10.)  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  On July 13, 2007, Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1, 4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  When Plaintiff was nineteen months old, a pediatric neurologist diagnosed a mild encephalopathic process that was revealed by abnormal muscle tone. Eventually Plaintiff was diagnosed with static encephalopathy/ cerebral palsy and borderline intellectual functioning.  Her onset date is November 17, 1992.  (Tr. 364, 445-448.)

Plaintiff was 13 years old and had just finished the seventh grade at the time of the hearing.  (Tr. 20, 498.)  She testified that she does not make her bed, "kind of" helps her mother around

the house, looks at her fingers when she types, has friends who are girls, and helps with grocery shopping. (Tr. 501-504.) She goes to a homework center at school twice a week for help. (Tr. 506-507.)

Ms. Nesmith, Plaintiff's mother, testified that Plaintiff was developmentally delayed and eventually diagnosed with cerebral palsy at age two. Plaintiff needs to be told "two or three times what you want her to do." (Tr. 505-506.) Plaintiff takes care of her dog; loses concentration quickly; is able to sit through half of a movie, and has been in special education classes since third or fourth grade. (Tr. 506, 509.) Plaintiff had a problem with bed-wetting since she was four years old, but it is controlled with medication. (Tr. 510.) Ms. Nesmith testified that Plaintiff requires close supervision. When she asked her daughter to pick up a prescription, Plaintiff forgot what she was sent to do and went to a friend's house without notifying Ms. Nesmith. (Tr. 514-515.)

## SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Pursuant to this statutory dictate, the Social Security Administration has enacted a three-step sequential analysis to determine whether a child was eligible for SSI benefits on the basis of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." *Id.* at § 416.924(b). Second, the ALJ considers whether the child has a "medically

determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* at § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* at § 416.924(c)-(d); *Id.* at Pt. 404, Subpt. P.

Pursuant to the final rules effective January 2, 2001,[1] an impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a (a). An impairment is a "marked limitation" if it "seriously interferes with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(20(I). By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

The child's functioning in six domains is assessed, and

---

[1] On September 11, 2000, the SSA published the Final Rules implementing the Welfare Reform Act, which became effective January 2, 2001 (the "Final Rules"). Supplemental Security Income; Determining Disability for a Child Under Age 18, 65 Fed. Reg. 54,747 (Sept. 11, 2000) (codified at 20 C.F.R. pts. 404, 416). The Final Rules apply because Plaintiff's current application was protectively filed January 24, 2003, well after the January 2, 2001, effective date.

includes determining the child's ability: (1) to acquire and use information; (2) to attend and complete tasks; (3) to interact and relate with others; (4) to move about and manipulate objects; (5) to care for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(a)-(b)(2001).  To demonstrate functional equivalence under the Final Rules, the child must exhibit a marked limitation in two of the domains, or an extreme limitation in one domain.  20 C.F.R. § 416.926a(e)(2)(I).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289,

293 (9th Cir. 1965).   On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.   If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

Plaintiff previously was awarded benefits from June 15, 1994, through March 10, 2000, when she was found to have medically improved. (Tr. 19.)  A prior ALJ denied Plaintiff's appeal on June 4, 2002, and the Appeals Council denied review.  Because Plaintiff did not appeal the determination, the current ALJ found no reason to reopen Plaintiff's prior application.  (Tr. 19.)  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity.  (Tr. 20.)  At step two, he determined that Plaintiff suffers from a history of cerebral palsy, low IQ, and enuresis.

1  (Tr. 23.)  The ALJ determined the evidence of record demonstrated

2  that Plaintiff's impairments, although severe, do not meet,

3  medically equal, or functionally equal the criteria of any of the

4  listings impairments.  (Tr. 23-24.)  With regard to functional

5  equivalence, the ALJ concluded that Plaintiff does not have an

6  "extreme" limitation in any domain of functioning or a "marked"

7  limitation in two domains.  (Tr. 25.)  Accordingly, the ALJ

8  concluded Plaintiff was not under a disability within the meaning of

9  the Social Security Act.  (Tr. 26.)

**ISSUES**

11     Plaintiff contends that the Commissioner erred as a matter of

12  law.  Specifically, she argues that the ALJ erred by rejecting the

13  opinion of her treating nurse practitioner and of an examining

14  psychologist, and by relying on the opinion of the testifying

15  medical expert.  (Ct. Rec. 14 at 7-12.)  The Commissioner responds

16  that the ALJ properly weighed the medical testimony.

17     The court must uphold the Commissioner's determination that

18  Plaintiff is not disabled if the Commissioner applied the proper

19  legal standards and there is substantial evidence in the record as

20  a whole to support the decision.

**DISCUSSION**

22  A.   Opinion of Treating Nurse Practitioner

23     Plaintiff alleges that the ALJ failed to properly credit the

24  opinion of her treating nurse practitioner, Katie Jones, A.R.N.P.

25  The Commissioner responds that the ALJ gave specific and legitimate

26  reasons for rejecting Ms. Jones's opinion.  The ALJ did not reject

27  Ms. Jones's opinion based on a nurse practitioner's general status

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 7

as a non-authorized medical source.[2]

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1463 (9th Cir. 1995). In addition to medical

---

[2] SSR 06-03p provides:

The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." See 20 CFR 404.1502 and 416.902. . . . In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include . . . nurse practitioners . . . . Information from these "other sources" cannot establish the existence of a medically determinable impairment.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 8

reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful in his adjudication.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)(citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record.  *Id.*

Nurse practitioner Jones began seeing Plaintiff when she was nine days old, in 1991, through at least October 5, 2004.  (Tr. 286; 461-466.)  Chart notes indicate "motor/language delays" in October of 1994 and 1995 (Tr. 295-296). In August of 2001 (when Plaintiff was nine years old), Ms. Jones noted that Plaintiff's mother indicated an Individual Educational Plan (IEP) was planned for the fall because Ms. Nesmith was advised Plaintiff required special education classes in reading and math.  Plaintiff was attending summer school.  (Tr. 300.)

The ALJ noted that in March of 2003, Ms. Jones opined that Plaintiff was "two grade levels below her current grade level in reading, writing, language, and math.  Nurse Jones wrote she [Plaintiff] had a very marked limitation in short-term memory capabilities and qualified for special education services.  Office notes indicate problems with bed-wetting."  (Tr. 21.)

The ALJ rejected Ms. Jones's opinion:

"Katie Jones, nurse practitioner, opined the claimant had a very marked limitation in short-term memory capabilities, however, this statement is not supported by any objective evidence, and is in conflict with the evidence as a whole."  (Tr. 25.)

The Commissioner responds that the opinion of the testifying psychological expert, Jay Toews, Ed.D., and of examining

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 9

psychologist Grant Gilbert, Ph.D., support the ALJ's assessment. (Ct. Rec. 16 at 7-8.)

Dr. Gilbert performed a consultative examination of Plaintiff in May of 2003 (Tr. 445-448), about two years before the hearing. Dr. Gilbert's record review included a letter dated March 4, 2003, and progress notes dated June 30, 1999, through August 27, 2002, from Ms. Jones. Dr. Gilbert noted that Plaintiff was diagnosed with cerebral palsy at age two. (Tr. 445.) Upon testing, Plaintiff recalled three of three items immediately, as well as after 15 minutes. (Tr. 446.) Dr. Gilbert diagnosed borderline intellectual functioning and nocturnal enuresis. He assessed a GAF of 70,[3] noting Plaintiff's problem of performing at grade level at school. (Tr. 448.) Dr. Gilbert did not diagnose a marked limitation in short-term memory.

Dr. Toews opined that Dr. Gilbert's report was very thorough, and consistent with other reports in the record, including the nurse practitioner's records. (Tr. 491.) Dr. Toews opined:

> [A]chievement standard scores are at about -1 standard deviation below average, arithmetic is in the average range. And, so, she appeared to be functioning at least cognitively at a fairly good level, low average to average range. And I think this reflects that her ability to sustain attention and concentration is unimpaired and that

---

[3] A Global Assessment of Functioning (GAF) of 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed. (DSM-IV), at 32 (1995).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 10

cognitively she's functioning in the high borderline to low average range of, of intelligence. So, in terms of acquiring and utilizing information certainly it's much less than marked and she should continue to do well.

The attending and completing tasks, I looked at the . . . Freedom from Distractability Index score reported by Dr. Gilbert. Processing speed is particularly important for children in school reflecting ability to look at and process routine visual information efficiently. That's well within the average range and probably accounts for her ability to succeed academically.

Freedom from distractability is relatively low, suggesting that she may have some difficult[y] processing more complex kinds of information. And in looking at I.Q. subtest scores her score under comprehension subtest, which generally reflects common sense reasoning, is very low. But her conceptual thinking reflected by the subtest score on the similarities test is in the low average to high borderline range. And this reflects some higher level cognitive ability, thinking ability. She is able to distinguish essential similarities and differences between verbally presented things. So, . . . there's . . . certainly less than marked problem with attention, attending and completing tasks.

The record from the nurse practitioner . . . indicated that she makes friends easily, that neuro-developmental progression was within normal limits. And Dr. Gilbert reported that the Vineland Socialization Domain score was about one standard deviation below average, which would indicate no significant problem socially. So I don't believe there's any limitation in the interacting and relating to others. So, the moving about and manipulating objects was no limitation. Daily living skills was in the low average to average range, so there seems to be no difficulty or no limitation in caring for self. Health and physical well-being, there was a report that she was aneuretic [sic] and the nurse practitioner was prescribing [medication] . . . what is . . . indicated [is] that neuro-developmental status was within normal limits, so health and physical well-being is less than markedly impaired. . . .

. . .

. . . According to testing that Dr. Gilbert did the attentional factors would be less than marked.

(Tr. 491-492, 494.)

Dr. Toews characterized the nurse practitioner's records as indicating that Plaintiff's neuro-developmental progression was

1   within normal limits.   The ALJ relies on the opinions of Drs.
2   Gilbert and Toews to reject the nurse practitioner's assessed marked
3   limitation in short-term memory.

4        Ms. Nesmith and Plaintiff's teachers echo treatment provider
5   Ms. Jones's opinion that Plaintiff has problems with short-term
6   memory.   A more recent examining psychologist, Dennis Pollack,
7   Ph.D., opined ten days before the hearing that Plaintiff has
8   markedly severe impairments in two domains (Tr. 472-474) (as
9   discussed below).   Dr. Toews testified he had not received Dr.
10  Pollack's report. (Tr. 494.)

11       The ALJ's reasons for rejecting the opinion of the treating
12  nurse practitioner are not supported by substantial evidence.

13  B.   Opinion of Examining Psychologist

14       Plaintiff alleges that the ALJ failed to properly credit the
15  opinion of examining psychologist Dr. Pollack. (Ct. Rec. 14 at 10-
16  12.)  The Commissioner responds that the ALJ properly found that Dr.
17  Pollack's findings were "in direct contrast to the bulk of the
18  evidence" contained in the medical record.   (Ct. Rec. 16 at 7,
19  referring to Tr. 26).

20       Dr. Pollack examined Plaintiff on March 22, 2005.  (Tr. 467-
21  474.) He administered four tests, including the MMPI-A and the Test
22  of Memory Malingering.  (Tr. 467.)  He reviewed Plaintiff's school
23  records and Dr. Gilbert's report.   Dr. Pollack observed that
24  Plaintiff quickly became bored with testing and had to have the
25  items read aloud to obtain her best effort.   Dr. Pollack observed
26  that Plaintiff was rather passive and had to be prompted to answer
27  questions.  (Tr. 467.)   Plaintiff was in the seventh grade.  (Tr.
28  468.) Dr. Pollack noted that Plaintiff is educationally delayed and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 12

has had an IEP since the fourth grade.  She had participated in physical and speech therapy.  Plaintiff takes DVAP and a[nother] medication for bed-wetting.  (Tr. 468.)  Plaintiff needs some help in taking care of her personal hygiene needs, visits regularly with friends or relatives, and does several household chores.  (Tr. 469.)

Dr. Pollack observed that because Plaintiff is 13 years old, her MMPI-A answers must be interpreted cautiously.[4]  (Tr. 469.)  Her responses on the test were consistently defensive, while responses to the Halstead-Reitan Neuropsychological Test Battery revealed moderate impairment.  (Tr. 469-470.)  Plaintiff had difficulty with tasks requiring new concept formation, spatial relations, "motor coordination, and attention/concentration."  (Tr. 470.)  Scores on both Trail Making tests were normal.  Results of the Aphasia Screening Test showed construction dyspraxia, central dysarthria, spelling dyspraxia, and dyscalulia.  (Tr. 470.)  Dr. Pollack opined that Plaintiff's difficulties with new concept formation, language, mathematics, spatial relations, and eye-hand motor coordination will continue to impair her ability to learn and "there is a high probability that she will fall further behind her peers as she gets older."  (Tr. 470.)  Dr. Pollack assessed a reading disorder, a mathematics disorder, and a cognitive disorder not otherwise specified.  (Tr. 470.)  He assessed marked impairment in cognitive and social development, in personal/behavioral development, and moderate impairment in concentration, persistence, and pace.  (Tr. 472-473.)  Dr. Pollack opined that Plaintiff's cognitive handicaps

---

[4] Dr. Pollack noted that the test is designed for adolescents at least 14 years old.  (Tr. 470.)

1  beyond reading, math and writing include new concept formation,

2  spacial relations, and eye-hand motor coordination, Without close

3  supervision, her judgment is poor.  (Tr. 474.)

4       The ALJ rejected Dr. Pollack's opinion:

5           [Dr. Toews testified] that the record shows that the
            claimant's achievement scores are one deviation below

6           standard.   She has a high borderline to low average
            cognitive ability and attention and concentration is

7           unimpaired.   Dr. Toews testified that she may have
            difficulty processing more complex tasks.  The record

8           shows no social problems and no limitations in daily
            living skills.  Dr. Toews went on to testify that two

9           grades below in achievement ability are not considered a
            marked impairment and the report by Dr. Pollack that she

10          is reading at the 4th grade level is unsupported by any
            test   scores,   and   Dr.   Toews   testified   he   saw   no

11          justification   for   a   learning   disability.    Dr.   Toews
            testified that in the domain of acquiring and using

12          information,   the   claimant   has   less   than   marked
            limitations.   In attending and completing tasks, she has

13          less than marked limitations.  She has no limitations in
            interacting and relating with others, in moving about and

14          manipulating objects, or in caring for self.  In health
            and  physical  well  being,  she  has  less  than  marked

15          limitation.  (See, in accord, Exhibit 10E).

16  (Tr. 23.)

17       The exhibit referenced by the ALJ (Exhibit 10E), is the form

18  completed by Dr. Toews on April 23, 2005.  (Tr. 439-440.)  In the

19  same form, Dr. Toews observed: "Neuro development within normal

20  limits per ARNP notes."  (Tr. 440.)  Dr. Toews indicated Plaintiff

21  was either less than markedly impaired or had no limitation in each

22  domain.  (Tr. 439-440.)

23       The ALJ rejected Dr. Pollack's opinion, finding that it

24          [I]s in direct contrast to the bulk of the evidence
            contained here, as outlined above.  Dr. Toews testified he

25          saw no justification for a learning disability although
            the claimant is in special education for reading and math.

26          Dr. Gilbert reported that none of the academic testing
            scores were low relative to her verbal IQ score of 78.

27

28  (Tr. 26.)  The "bulk of the evidence" referenced by the ALJ in his

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS – 14

decision includes: (1) Plaintiff's testimony that she can type and gets along well with others; (2) Dr. Gilbert's opinion; (3) school records from the 7th grade showing Plaintiff was eligible for special education pull-out services in reading and math, which were at the 5th and 4th grade levels, respectively; (4) school records from the same period showing Plaintiff was on task, doing well, acted as a teacher's helper, worked hard, and set a good example; (5) a teacher's report in February of 2003 that Plaintiff does not grasp new concepts easily and has borderline intellectual functioning; (6) a teacher's note that Plaintiff had difficulty turning work in on time and staying on task; (7) a teacher's observation that Plaintiff has a close group of friends; (8) Plaintiff participates in PE, and Ms. Nesmith reports Plaintiff has a happy disposition; and (9) Ms. Nesmith testified that Plaintiff is 2 to 3 years behind her age group, but this was given little weight by the ALJ because it was found to be in conflict with school evidence and medical expert evaluation. (Tr. 21-26.)

The ALJ's reasons for rejecting Dr. Pollack's opinion are not supported by substantial evidence. Contrary to the ALJ's statement, Ms. Nesmith's testimony that Plaintiff is 2 to 3 years behind her age group (at least academically), is supported by school records. In February of 2002, Plaintiff's teacher, Debbi Hatcher, reported Plaintiff was performing at least two or more years below grade level and had difficulty keeping pace with other children. (Tr. 376.) The academic content of her lessons had to be modified to two grade levels below the current grade in four subject areas. Ms. Hatcher, like Nurse Jones, expressed concern with respect to Plaintiff's short-term memory. Ms. Hatcher noted that Plaintiff

took the attendance chart to the office, but often forgot to bring
back items from the mailbox as Ms. Hatcher had asked.  (Tr. 376.)
The ALJ's third reason (working two and three grades below level
even with pull-out special educational assistance) supports rather
than undermines Dr. Pollack's assessment.  Similarly, the ALJ's
fifth and sixth reasons (teacher's opinion that Plaintiff does not
grasp new concepts easily and has borderline intellectual
functioning, and has a difficult time staying on task and turning
even modified work in on time) support, rather than diminish, the
weight to be given to Dr. Pollack's opinion.  The remaining evidence
cited by the ALJ seems to support finding no or limited impairment
with respect to physical well-being, but does not support the ALJ's
rejection of Dr. Pollack's opinion, particularly his opinions which
are consistent with those of Plaintiff's teachers, parent, and
treating nurse practitioner.

In 2003, Plaintiff's teachers indicated that she did not grasp
new concepts easily.  (Tr. 402.)  Teacher adjusted her class work to
allow her to participate in class, with shortened lessons, direct
instruction, and more time to finish activities.  She was in 300
minutes a week of special education instruction.  (Tr. 402.)  Even
so, Plaintiff made limited progress when doing work two grades below
grade level, had difficulty staying on task, turning work in on
time, and finishing her written schoolwork.  (Tr. 403.) The opinions
of the nurse practitioner, teachers, and Ms. Nesmith are largely
consistent with Dr. Pollack's opinion.

Testimony of a medical expert may serve as substantial evidence
when supported by other evidence in the record. *Andrews*, 53 F.3d at
1041.  In this case, the ALJ relied on the medical expert's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 16

testimony and did not properly reject the opinion of the most recent examining psychologist, Dr. Pollack.  Although not raised by the Plaintiff, it also appears that the ALJ's reasons for discrediting the testimony of Ms. Nesmith are not supported by the evidence.

C.   Remedy

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining doctor.  The general rule, found in the *Lester* line of cases is that "we credit that opinion as a matter of law." *Lester*, 81 F.3d at 834; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).  Under the alternate approach found in *McAllister, supra*, a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion.  *See also Benecke*, 379 F.3d at 594 (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues).  Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzales v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).

It is unclear from the record whether Plaintiff would be found disabled if the medical evidence and the testimony of Plaintiff's mother were properly analyzed.  The court expresses no opinion as to what the ultimate outcome on remand will or should be.  The fact-finder is free to give whatever weight to the evidence is deemed appropriate.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("questions of credibility and resolution of conflicts in the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS – 17

1  testimony are functions solely of the Secretary"). Accordingly,

2  **IT IS ORDERED**:

3  1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is

4  **GRANTED**; the matter is **REMANDED** to the Commissioner for additional

5  proceedings.

6  2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is

7  **DENIED**.

8  3.   Judgment shall be entered for **PLAINTIFF**. An application

9  for attorney fees may be filed by separate motion.

10  4.   The District Court Executive is directed to enter this

11  Order, provide a copy to counsel for Plaintiff and Defendant, and

12  **CLOSE** the file.

13  DATED April 8, 2008.

14

15  _____S/ CYNTHIA IMBROGNO_____
16  UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS – 18